Mrs. Barbara Dean VAUGHN and Joe Marshall Vaughn, Plaintiffs-Appellants,

v.

Dr. Ben A. SHELTON, Defendant-Appellee.

Court of Appeals of Tennessee, Middle Section.

June 28, 1974.

Certiorari Denied by Supreme Court Oct. 21, 1974.

Stanley M. Chernau, Denney, Lackey & Chernau, Nashville, for plaintiffs-appellants.

Watkins, McGugin, Finch & McNeilly, Nashville, for defendant-appellee.

## OPINION

SHRIVER, Judge.

## I.

### The Case

In the briefs of counsel these two consolidated cases were designated as malpractice suits in which plaintiff, Barbara Dean Vaughn, seeks to recover damages for the alleged negligence of the defendant, Dr. Ben A. Shelton, in the performing of an operation on the plaintiff, Mrs. Vaughn, for the purpose of sterilization or preventing her from future pregnancies.

The suit of plaintiff, Joe Marshall Vaughn, husband of Mrs. Vaughn, is for expenses and loss of services of his wife because of the alleged negligence of the defendant, Dr. Shelton, in the performance of said operation.

It might be observed in passing that, with propriety, the suit might have been brought and designated as one for breach of contract.

The case was tried before Judge Wiley Holloway and a jury in the Circuit Court of Rutherford County, Tennessee, on August 30, 1973 and at the conclusion of the proof offered by plaintiffs, a motion for a directed verdict in favor of the defendant was sustained and the cases dismissed.

From this action of the Trial Court the plaintiffs have perfected their appeal to this Court and have assigned as error the action of the Trial Judge in directing a verdict for the defendant.

## II.

### The Pleadings and Proof

The bill of complaint of Barbara Dean Vaughn, among other things, alleges that on or about August 26, 1970, she employed defendant as a physician and surgeon to perform sterilization surgery on her during the time she was confined in the Rutherford County Hospital in Murfreesboro for the delivery of her fourth child. She alleges that she employed the defendant by reason of the fact that she was advised by her attending physician that due to her extremely nervous condition and also due to a congenital hip problem that appeared in her first three children, sterilization should be performed.

It is alleged that on or about August 24, 1970, while plaintiff was in the delivery room after the birth of her fourth child, defendant undertook to perform sterilization surgery on her and she was given to

understand that said surgery was done properly and successfully.

It is alleged that about four months after the sterilization surgery was performed by the defendant, she again became pregnant and that her fifth child was due to be delivered in August, 1971, but this suit was filed before the birth of said child in order to meet the requirements of the Statute of Limitations.

The defendant's answer admits that on August 24, 1970, immediately after plaintiff had given birth to a child, he was called into the delivery room for the purpose of performing a tubal ligation on her, which he did. He denies that he held out to the plaintiff that the operation would be successful as neither this type of operation or any other surgery is always successful, and from time to time nature undoes the work done by the surgeon. He states that he is informed that plaintiff later became pregnant and has delivered another child but denies that there was any negligence on his part in performing the operation in question.

There is a stipulation in the record, signed by counsel for plaintiffs and defendant, putting into the record two charts from the Rutherford County Hospital on Mrs. Barbara Dean Vaughn. One chart was made on the occasion of her admission to the Hospital in July, 1970, and the other on August 15, 1971 when she was admitted for the birth of her fifth child, a baby daughter named Maquel.

Mrs. Vaughn testified concerning the physical defects of her children, particularly the third child who required hospitalization for a month while surgery was performed in order to correct the birth defect. She also testified concerning her reasons for seeking the operation which was performed by Dr. Shelton and the fact that within four months after the operation which she was led to believe would render her incapable of further pregnancies, she again became pregnant and, subsequently, gave birth to her fifth child, which child, it appears, was normal.

Mr. Vaughn testified about the operation and the expenses incident to and following same. He also testified about the highly nervous condition of his wife, particularly after she learned of her last pregnancy.

From his testimony it appeared that, after the birth of the fifth child, he and his wife employed Dr. Charles Smith who again performed the sterilization operation of tubal ligation on Mrs. Vaughn, which operation appears to have been successful.

For some reason which does not appear in the record, Dr. Smith was not called as a witness in this case.

Dr. E. C. Tolbert gave his deposition which was read to the Court and jury and which was to the effect that Mrs. Vaughn came to his office in January, 1971, primarily to ask him to determine whether or not she had again become pregnant in spite of the operation previously performed upon her in August, 1970 by the defendant, Dr. Shelton.

When asked to explain the fact of pregnancy in spite of the operation previously performed on her, he answered:

"Well, there is a possibility that the tube can be recanalized after being severed at surgery. There is a possibility—we all make mistakes. There is a possibility that the tube could have been overlooked."

He was then asked if he examined the records at the hospital and replied that he did examine the said records and, particularly, the pathology report after the above mentioned operation and, when asked what that report showed, he stated:

"The record showed that a segment of one tube was on the specimen and a fragment of ovary was contained on the tissue report."

He was asked what he would conclude from that report and answered:

"I would conclude that the pathologist has only examined one tube, or fragment of a tube, and only one ovary segment."

He read from the pathologist's report, stating:

"Diagnosis, one, excised segment of Fallopian tubes, in parenthesis one, and two, excised segment of ovary."

He was then asked and answered:

"Q. When you read it, what did you conclude?

A. I would conclude from the report that a tube was examined at the time of the pathological examination, and there was another segment of tissue interpreted as ovary that was examined.

Q. Would you conclude that the doctor performing the operation did not tie both tubes?

A. I couldn't conclude that definitely from this tissue report. One might conjecture this, but I could not make that firm conclusion.

Q. Why would you conjecture that?

A. I would say since this was only what was shown on the tissue report one would suspect the possibility that the other tube may have been overlooked and instead something else, such as the fragment of the ovary, was mistaken for the tube."

### III.

#### Our Conclusions

The single question for determination on this appeal is whether or not the Trial Judge erred in directing a verdict for the defendant at the conclusion of plaintiff's proof.

One of the most accurate statements with respect to the rule applicable in this case was announced in Ridley v. Spence, 61 Tenn.App. 571, 456 S.W.2d 846, as follows:

"The rule for determining a motion for directed verdict requires the trial Judge and reviewing Court on appeal to look to all the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, to allow all reasonable inferences from it in his favor and to discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied."

In a more recent case, Silcox v. Smith County, Tenn.App., 487 S.W.2d 652 (1972), this Court, in an Opinion written by Judge Todd, and quoting from Scott v. Atkins, 44 Tenn.App. 353, 314 S.W.2d 52, stated:

"Any fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. In civil cases facts are proved by a preponderance of the evidence. If unequal conflicting probabilities, or unequal inconsistent theories are shown by the evidence; or if the minds of reasonable men might differ from the proved facts as to whether the conflicting probabilities, or inconsistent theories, are equally supported by the evidence, the case must go to the jury."

There is no dispute in this record that the defendant Doctor performed an operation on plaintiff, Mrs. Vaughn, with the implied, if not the expressed understanding that she might reasonably expect certain results therefrom and that those results did not obtain. This is not a typical malpractice suit in which the skill of a doctor or surgeon is the issue, nor is it primarily a

question as to whether the doctor followed the procedures that are generally recognized by the profession as being proper.

It might be said that the procedure involved is to a large extent mechanical and physical. It does not require expert medical evidence to prove that if both of the Fallopian tubes are severed and closed, the patient would thereby be rendered immune from pregnancy.

When we consider the evidence in the case at bar and the short period of time that elapsed after the operation when pregnancy was again found in the patient, a reasonable conclusion from that fact might be that one or both of the tubes were not closed, whether by negligence or a mere oversight and failure to carry out the implied terms of the agreement that the tubes would be closed.

For these reasons, we feel compelled to hold that it was error to direct a verdict for the defendant at the conclusion of plaintiff's evidence.

Where material facts concerning the issues in the suit are peculiarly within the knowledge and possession of the defendant, in the interests of truth and justice, the Courts should be slow to grant peremptory instructions before hearing defendant's evidence.

In McCaleb v. American Insurance Co., 205 Tenn. 1, 325 S.W.2d 274, the Court said:

"In case of doubt as to whether there is a jury question, it is safer to leave it to the jury."

For all of the foregoing reasons, the assignment of error is sustained and the judgment of the Trial Court reversed and the cause remanded for a new trial.

Reversed and remanded.

TODD, J., and SMITH, Special Judge, concur.