**Jerome HENDERSON, Plaintiff,**

v.

**CORRECTIONS CORPORATION OF AMERICA, Timothy Baltz, and David Myers, Defendants.**

**No. 1:94–CV–163.**

United States District Court,
E.D. Tennessee,
at Chattanooga.

Jan. 29, 1996.

Jerome Henderson, Dayton, OH, pro se.

Christopher H. Steger, Miller & Martin, Chattanooga, TN, for CCA Silverdale.

---

**1.** While not dispositive, the Court notes Rule 7.2 of the *Local Rules of the Eastern District of Tennessee* allows the Court to consider the "[f]ailure to respond to a motion [to] be deemed a waiver of any opposition to the relief sought."

## MEMORANDUM

COLLIER, District Judge.

Before the Court is the Motion for Summary Judgment filed by Defendants Corrections Corporation of America ("CCA"), Timothy Baltz ("Baltz"), and David Myers ("Myers") (Court File No. 52). The Court's file indicates this case has proceeded slowly and is replete with judicial proddings, *inter alia:* an Order to sign pleadings filed without signature (Court File No. 36); an Order to compel responses to interrogatories (Court File No. 43); an Order to Show Cause why the case should not be dismissed (Court File No. 45); an Order to produce an audio tape (Court File No. 51); and an Order granting an extension of time through 10 November 1995 within which to file dispositive motions (Court File No. 55). In fact, Defendants filed their summary judgment motion *before* the Court granted an extension of time for the filing of dispositive motions. More than three months have now passed since the filing of Defendants' summary judgment motion, and more than two months have passed since the dispositive motion deadline. Plaintiff Jerome Henderson ("Henderson"), acting *pro se*, did not file a Response to Defendants' motion.[1] For the following reasons, the Court will GRANT Defendants' motion for summary judgment.

## I. FACTS

The Court draws these facts from the Amended Complaint (Court File No. 10) and Defendants' Memorandum in support of summary judgment (Court File No. 53). The claims remaining from Henderson's amended complaint arise under 42 U.S.C. § 1981, *Tenn. Code Ann.* § 50-1-304, Executive Order 11246, the First, Thirteenth, and Fourteenth Amendments to the United States Constitution, and the "Fair Employment Law." Henderson's initial complaint included a claim under "Title VII disparate treatment," presumably, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

---

*Local Rule* 7.1(a) gives a party twenty (20) days in which to respond to dispositive motions, but this briefing schedule may be set aside by Court order or upon motion.

§ 2000e, *et seq.*, which does not appear in the amended complaint. For purposes of this Memorandum and its accompanying Order, the Court will consider the amended complaint to also include a claim under Title VII. *See Black v. Parke*, 4 F.3d 442, 448 (6th Cir.1993) (noting *pro se* complaints must be read liberally).

Henderson worked as a corrections officer at Silverdale Detention Center ("Silverdale"), an adult correctional facility operated by CCA, from 22 January 1991 until his termination on 22 September 1993. At the time of his termination, Henderson was a member of Local 107 of the United Plant Guard Workers of America ("UPGWA") and subject to a collective bargaining agreement ("Agreement") between CCA and UPGWA (*See* Court File No. 52, Ex. 1). Article 5 of the Agreement authorized CCA to establish terms and conditions of employment, including matters relating to discipline and discharge. These terms and conditions included the following:

Offenses where an employee may be discharged upon initial occurrence:

\* \* \* \* \* \*

11. Failure to refrain from engaging in behavior which could reflect negatively on CCA and/or the contracting agency. Employees shall conduct themselves in such a manner so as to avoid charges and/or convictions of law violations.

\* \* \* \* \* \*

13. Violation of any equal employment or harassment policy of the company.

14. Failure to maintain a work environment free from any harassment, including sexual harassment.

\* \* \* \* \* \*

20. Violation of company policy regarding disparaging remarks concerning the company.

\* \* \* \* \* \*

36. Violating company/facility/corporate policies/procedures.

*See* Court File No. 53, pp. 2–3. Additionally, CCA required employees to receive authorization before speaking with the media about CCA. Henderson signed a form acknowledging his receipt of these terms and conditions (*See id.* at p. 3).

Prior to August 1993, Henderson served as the public relations officer with the UPGWA. His duties involved the preparation and distribution of a periodic newsletter to union members. Henderson's last newsletter announced his resignation as public relations officer and discussed union business. However, Henderson included pictures of the heads of Baltz, warden at Silverdale, and Local 107 President Randy Safford ("Safford") affixed to the back ends of two donkeys. Beneath the picture of Baltz read: "This letter goes out to you and I also personally give to you the Jackass of the Year Award. You, Warden Baltz, are the creator of this whole immoral, racist atmosphere created at CCA that hangs heavy. You are a racist and vindictive person." Beneath the picture of Safford read: "So for your treachery, I'm personally giving you the Jackass of the Year Award. Quite frankly, you and the CCA are a wart on the nose of humanity" (*Id.* at p. 4). The newsletter also included four pages of pictures of women in bathing suits under the caption: "Beauty Review: For Your Eyes Only." [2]

Henderson also participated in an unauthorized interview on a local Chattanooga, Tennessee radio station during which he discussed CCA.[3] During the interview,

2. Defendants argue Henderson admitted he did not have permission to publish this newsletter (Court File No. 53, p. 4). The Court reviewed the deposition pages cited in support of this contention and found Henderson at best equivocates as to the degree of "permission" he needed before publishing a newsletter (*See* Court File No. 52, Ex. 2 at pp. 144–45). Nonetheless, it is clear Henderson *did not* circulate the newsletter for approval before publishing it, and he indicated "[i]t was already pre-approved by me being a

public relations officer (*sic*.) told me what I supposed to do in my job" (*Id.* at p. 145).

3. The Court's Order (Court File No. 51) pertaining to discovery of an audio tape relates to this radio interview. The Court has no record of Henderson's compliance with the Order. The Court has only Defendant's version of what took place during the radio interview, given by Baltz as part of his affidavit (*See* Court File No. 54).

Henderson purportedly claimed Silverdale work crews routinely slip away to drink alcohol, use drugs, and have sex with their wives and girlfriends; he accused CCA of operating a poorly run facility where security is lax; and he commented that CCA guards are unarmed when they transport prisoners (*See* Court File No. 54).

Defendants contend Henderson intentionally and deliberately defamed CCA and put CCA in a negative light. Defendants point out Henderson admitted reading the rules of the Agreement before signing that he had reviewed them (*See* Court File No. 52, Ex. 2 at pp. 129–30). Defendants argue they terminated Henderson for his "blatant violations of CCA's policy requiring all employees to obtain authorization before discussing CCA with the media and its policy prohibiting employees from making disparaging remarks about CCA and other employees" (Court File No. 53, p. 5).

## II. STANDARD OF REVIEW

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir.1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow*, 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir.1994). Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, (1986); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir.1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411.

## III. ANALYSIS

### A. First, Thirteenth, and Fourteenth Amendments

Henderson's claims brought under the First, Thirteenth, and Fourteenth Amendments fail. A plaintiff must allege a cause of action under 42 U.S.C. § 1983 in order to bring a claim of a constitutional violation of the First or Fourteenth Amendments. *See Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992) (stating a "[p]laintiff has no cause of action directly under the United States Constitution.... [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."), *citing Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir.1987) (noting that

"where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violation"); *see also Valerio v. Dahlberg,* 716 F.Supp. 1031, 1036 (S.D.Ohio 1988) (dismissing a Fourteenth Amendment claim). Here, though, Henderson did not allege a violation arising under 42 U.S.C. § 1983. Accordingly, Henderson does not have an independent cause of action arising under the First and Fourteenth Amendments, and these claims will be **DISMISSED.**

■ Similarly, the Thirteenth Amendment does not give rise to an independent cause of action. *Westray v. Porthole, Inc.,* 586 F.Supp. 834, 838–39 (D.Md.1984) (citations omitted). A plaintiff must pursue the statutory remedies created by Congress: "[T]hese statutes define the scope of the cause of action; one cannot try for a broader scope by suing under the Thirteenth Amendment itself." *Id.* at 839. The statutory remedy applicable here is 42 U.S.C. § 1981, a cause of action properly raised by Henderson and to be discussed *infra.* Accordingly, Henderson does not have an independent cause of action arising under the Thirteenth Amendment, and this claim will be **DISMISSED.**

### B. Executive Order 11246

■ Henderson also does not have an independent, private cause of action under Executive Order 11246. *See Farkas v. Texas Instrument, Inc.,* 375 F.2d 629, 633 (5th Cir.), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967); *Banks v. Jacksonville Shipyards,* 1988 WL 235865, at p. *2 (M.D.Fla. July 7, 1988) (noting enforcement is left to the Department of Labor); *see generally Holden v. Owens–Illinois, Inc.,* 793 F.2d 745 (6th Cir.1986). Accordingly, Henderson's claim arising under Executive Order 11246 will be **DISMISSED.**

### C. *Tenn.Code Ann.* § 50–1–304

Specifically at issue is whether Henderson's claim satisfies *Tenn.Code Ann.* § 50–1–304, which, in pertinent part, reads as follows:

(a) No employee shall be discharged or terminated solely for refusing to par-ticipate in, or for refusing to remain silent about, illegal activities.

(b) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect public health, safety or welfare.

(c) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

When determining how to apply the statute, the court in *Merryman v. Central Parking System, Inc.,* No. 01A01–9203–CH–00076, 1992 WL 330404 (Tenn.Ct.App. Nov. 13, 1992) followed the "framework of analysis of a common law wrongful or retaliatory discharge action." 1992 WL 330404, at p. *6. The court relied on a similar analysis of a retaliatory discharge action based upon an employee's assertion of a workers' compensation claim. *See Johnson v. Saint Francis Hosp., Inc.,* 759 S.W.2d 925, 928–29 (Tenn.Ct. App.1988) (discussing the elements necessary to establish a *prima facie* case of retaliatory discharge). The Tennessee Supreme Court later essentially adopted the *Johnson* framework in *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 558 (Tenn.1993).

■ In light of this analysis, the *Merryman* court found four elements necessary for the existence of a cause of action under the Act:

(1) the plaintiff's status as an employee of the defendant;

(2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities;

(3) the employer's discharge of the employee; and

(4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Merryman,* 1992 WL 330404, at p. *6; *see also Leeman v. Edwards,* No. 01A01–9401–CV–00050, 1994 WL 560889, at p. *2 (Tenn.

Ct.App. Oct. 14, 1994). Defendants do not dispute that Henderson was an employee, nor that he was discharged. Defendants do contest Henderson's ability to meet the second and fourth of the *Merryman* elements (Court File No. 53, p. 9).

### 1. The second element

*Merryman* stated that "proper construction of the [Act] requires a situation in which an employee must either remain silent about an illegal activity or face the possibility that [he] may be discharged." *Merryman*, 1992 WL 330404, at p. *7. "[R]emoving the employee from the position of having to choose between reporting illegalities and remaining employed" is the Act's public policy objective. *Id.* "[R]emaining silent may be with an explicit or implicit condition to continued employment." *Id.* This case does not concern Henderson's refusal of an explicit, direct request or instruction to participate in illegal activities. Nor does this case concern his refusal of an explicit, direct request or instruction to remain silent about illegal activities. Ordinarily, under *Merryman*, the Court's review would then become whether the proof is "sufficient to show that the threat of dismissal is real, . . ., and not merely the perception of the employee." *Id.; Leeman*, 1994 WL 560889, at p. *5.

■ The Court, though, understands Henderson's claim to be that his discharge resulted from his dissemination of the newsletter and his opinions expressed therein. As such, Henderson did not face the choice between reporting illegalities and keeping his job. *See Merryman*, 1992 WL 330404, at p. *7; *Leeman*, 1994 WL 560889, at p. *5 (noting that the plaintiff must "fear the threat of dismissal if [she] gave information" regarding the illegal activities). These cases indicate that there must be a fear of dismissal contemporaneous with the plaintiff's decision whether to report the illegal activities. Henderson presumably also offers the fact of his termination as clear evidence that he was discharged in violation of *Tenn.Code Ann.* § 50–1–304. However,

[t]he Plaintiff's subsequent termination is not enough to establish an implied intention for the Plaintiff to remain silent, nor

does the threat of future dismissal arise anytime an employee reports his employer's illegal activities. A mere inference that the Plaintiff was terminated because [she reported illegal activities], which arises solely from the fact of the dismissal, is not enough to make out a cause of action under [the Act].

*Leeman*, 1994 WL 560889, at p. *5.

Henderson did not satisfy the second element and thus cannot establish a *prima facie* case of a violation of *Tenn.Code Ann.* § 50–1–304. Accordingly, the Court will not evaluate whether Henderson meets the fourth element and will **DISMISS** Henderson's claim arising under *Tenn.Code Ann.* § 50–1–304.

### D. 42 U.S.C. § 1981

■ 42 U.S.C. § 1981 and Title VII share the same elements of proof. *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 n. 7 (5th Cir.1994) (noting that the "elements of both claims are identical"), *cert. denied*, —— U.S. ——, 115 S.Ct. 1099, 130 L.Ed.2d 1066 (1995); *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir.) (noting that "only intentional discrimination may violate section 1981"), *cert. denied*, —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1270 n. 3 (6th Cir.1986) (noting that liability under section 1981 and Title VII depends on the same proof).

■ Under Title VII, the plaintiff bears the initial burden of establishing a case of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The plaintiff meets this burden by showing either direct evidence of intentional discrimination or the existence of circumstantial evidence of discrimination. *Talley*, 61 F.3d at 1246 (citations omitted). Henderson has not shown direct evidence of intentional discrimination by CCA. The Court then looks to the existence of circumstantial evidence. In order to establish a *prima facie* case through this analysis, a plaintiff claiming disparate treatment (Court File No. 10, p. 2) must show that (1)

he is a member of a racial minority, (2) he and similarly situated white employees received different treatment, and (3) sufficient evidence exists to establish a causal connection between race and the defendant's alleged acts. *See Cooper,* 795 F.2d at 1270.

 Assuming Henderson's satisfaction of a *prima facie* case, the burden then shifts to Defendants to articulate a "legitimate nondiscriminatory reason" for the employee's termination. *Talley,* 61 F.3d at 1246, *citing Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993). Should Defendants meet their burden, Henderson must then prove by a preponderance of the evidence that Defendants' proffered legitimate reasons were actually a pretext for discrimination. *Hicks,* 509 U.S. at 506–07, 113 S.Ct. at 2747–48; *Gagne v. Northwestern National Ins. Co.,* 881 F.2d 309, 313 (6th Cir.1989). To show pretext, Henderson "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir.1994). To do so, he is

> required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [their] discharge[s], or (3) that they were *insufficient* to motivate discharge.

*Id.* at 1084 (citation omitted). Significantly, the ultimate burden of proving a case of employment discrimination rests at all times with Henderson. *Hicks,* 509 U.S. at 506–07, 113 S.Ct. at 2747–48; *Talley,* 61 F.3d at 1246; *Gagne,* 881 F.2d at 313.

 Henderson does not establish a *prima facie* case. Defendants argue Henderson's discharge was based on actual conduct: dissemination of the defamatory newsletter and the unauthorized radio interview during which he made alleged disparaging remarks about CCA. *See Robertson v. Georgia Dept. of Corrections,* 725 F.Supp. 533, 536 (S.D.Ga.1989) (noting if the plaintiff "did commit the misconduct," he must show

"that persons outside the protected class committed similar misconduct and were subjected to less severe disciplinary measures"). In order for other persons to be "similarly situated" to Henderson, they must be "similarly situated *in all respects*" and have perpetrated conduct of "comparable seriousness." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992).

Defendants admit other CCA employees may have appeared on local television programs without authorization. However, they offer uncontested evidence that these employees never openly disparaged CCA and only talked about union activities. Moreover, Defendants offer undisputed evidence that no other employee ever distributed a newsletter with highly critical and offensive material as did Henderson. *See* Court File No. 53, p. 16. Defendants argue Henderson's claim that two white female employees who allegedly engaged in a homosexual relationship with a female inmate and were not discharged by CCA does not establish an example of similarly situated other persons. *See Mitchell,* 964 F.2d at 583 (noting "allegations regarding other employees not being fired for different, but what [the plaintiff] subjectively believes to be more serious, misconduct simply does not satisfy that element"). The Court agrees that, without more than a subjective believe, this does not raise an inference of discrimination. *See Boddy v. Dean,* 821 F.2d 346, 349 (6th Cir.1987) (noting that "speculation and hypothesis" are not sufficient evidence to contest a summary judgment motion).

Accordingly, the Court finds Henderson did not establish a *prima facie* case of discrimination under 42 U.S.C. § 1981 and will **DISMISS** this claim.

## IV. CONCLUSION

 The non-moving party must respond to a motion for summary judgment with more than a "scintilla of evidence." *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989), *citing Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. This requires the plaintiff to "present affirmative evidence in order to defeat a properly supported mo-

tion for summary judgment." *Id., citing Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. This requires the plaintiff, even a *pro se* plaintiff, as the non-moving party to set forth "specific facts showing that there is genuine issue for trial." *Black,* 4 F.3d at 448. Finally, it is *not* the Court's "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street,* 886 F.2d at 1479–80. Henderson did not satisfy his burden under the summary judgment standard by proffering sufficient evidence that Defendants violated any of his protected rights. Accordingly, the Court will **GRANT** the motion for summary judgment filed by Defendants (Court File No. 52).