IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2007 Session

## WILLIAM L. THOMPSON v. MEMPHIS LIGHT, GAS AND WATER DIVISION

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-05-1303     D.J. Alissandratos, Chancellor**

_____

**No. W2006-01972-COA-R3-CV - Filed July 12, 2007**
_____

The trial court awarded summary judgment to Plaintiff, former employee of Defendant Memphis Light Gas and Water Division ("MLGW"), upon determining that Plaintiff was entitled to severance benefits under "personnel policy 22-25" because revocation of the policy by MLGW's Board was negated due to violations of the Open Meetings Act. We reverse the award of summary judgment to Mr. Thompson and award summary judgment to MLGW on other grounds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Allen Jerome Wade, Brandy S. Parrish, Lori Hackleman Patterson, and Stephen Harold Biller, Memphis, Tennessee, for the appellant, Memphis Light, Gas and Water Division.

Ronald D. Krelstein, Memphis, Tennessee, for the appellee, William L. Thompson.

### OPINION

The primary issue presented by this lawsuit is whether Plaintiff William L. Thompson (Mr. Thompson) is entitled to enhanced severance benefits under Memphis Light Gas and Water Division ("MLGW") personnel policy 22-25 ("policy 22-25" or "the policy"), which was adopted by the Board of Defendant MLGW ("the Board") in 2000 and subsequently rescinded by the Board in August 2004. This dispute arises in the midst of the on-going storm at MLGW. In 2000, when the city of Memphis was considering the sale of MLGW, the MLGW Board adopted personnel policy 22-25, which provides for severance and "enhanced severance" benefits. According to MLGW's brief to this Court, the policy was adopted "in order to provide lucrative benefits to MLGW senior employees in the event of a sale of MLGW by the City." The policy allowed MLGW to offer enhanced severance benefits to employees and appointed officers whose full-time positions were

terminated under certain conditions in exchange for "separation and release" agreements. It is undisputed that the policy was never approved by the City Council, was not included in MLGW budgets, and apparently went largely unnoticed until 2004 when Memphis Mayor Willie Herenton ("Mayor Herenton" or "the Mayor") chose not to reappoint then MLGW President Herman Morris and Mr. Thompson, then Senior Vice President and Chief Operating Officer, applied for the position of President. In July 2004, however, Joseph Lee (Mr. Lee) was hired as President, and on September 13, 2004, Mr. Thompson's position at MLGW was eliminated and Mr. Thompson was advised that there was no other job opening available at MLGW.

In the meantime, in January 2004, the City Council passed a resolution limiting the Board's ability to enter into contracts providing enhanced severance benefits. Additionally, in January and August 2004, Mayor Herenton requested that the Board rescind policy 22-25. On August 19, 2004, the Board voted at its regularly scheduled meeting to rescind the policy by vote of three to zero. The matter apparently was also discussed at an 11:00 AM meeting between the Board and the President of MLGW. Accordingly, because the Board rescinded policy 22-25 prior to the elimination of Mr. Thompson's position, Mr. Thompson was not entitled to enhanced severance benefits under the policy.

On July 13, 2005, however, Mr. Thompson filed suit in the Shelby County Chancery Court alleging he was entitled to severance benefits under policy 22-25 because the August 19 vote to rescind the policy was null and void due to violations of the Open Meetings Act by the Board. He accordingly sought all termination benefits to which he was entitled under policy 22-25. Mr. Thompson also sought damages against Mr. Lee, alleging Mr. Lee had conspired with Mayor Herenton to terminate his employment in violation of the Whistleblower Act. He also alleged Mr. Lee had engaged in tortious interference with his job and had wrongfully failed to allow him to return to his position with MLGW.

In March 2006, Mr. Thompson nonsuited all claims except the Open Meetings Act claim and his allegation that the severance policy had been rescinded illegally. In May 2006, he filed an amended motion for summary judgment, seeking a declaration that the MLGW Board members had violated the Act. In his motion, Mr. Thompson stated that benefits under the policy had been determined by MLGW to be $275,955.70. He further sought prejudgment interest, the imposition of a penalty in either the form of punitive damages or attorney's fees, and an injunction prohibiting the Board from holding meetings in violation of the Open Meetings Act.

In its response to Mr. Thompson's motion for summary judgment, MLGW asserted that a genuine issue of material fact existed with respect to the alleged violations of the Open Meetings Act and further asserted that the adoption of policy 22-25 was *ultra vires*. MLGW asserted the policy was null and void *ab initio* because it had not been approved by the Memphis City Council as required by the City Charter. Mr. Thompson, in turn, challenged the defense on procedural grounds and asserted that, as a matter of law, the policy was not *ultra vires* because MLGW had not adopted it in the entire absence of authority.

The trial court denied Mr. Thompson's procedural defense. It further held that MLGW's *ultra vires* defense was not applicable to bar Mr. Thompson's claims. The trial court determined that the Board violated the Open Meetings Act ("the Act") as codified at Tennessee Code Annotated § 8-44-101, *et. seq.*, during the course of revoking the policy, rendering the Board's revocation of the policy null under Tennessee Code Annotated 8-44-105.[1] It accordingly

---

[1]The Open Meeting Act provides, in pertinent part:

**Policy -- Construction. --** (a) The general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret.

(b) This part shall not be construed to limit any of the rights and privileges contained in article I, § 19 of the Constitution of Tennessee.

Tenn. Code Ann. § 8-44-101.

**Open meetings – "Governing body" defined – "Meeting" defined. –** (a) All meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee.

(b)(1) "Governing body" means:

(A) The members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration and also means a community action agency which administers community action programs under the provisions of 42 U.S.C. § 2790. Any governing body so defined by this section shall remain so defined, notwithstanding the fact that such governing body may have designated itself as a negotiation committee for collective bargaining purposes, and strategy sessions of a governing body under such circumstances shall be open to the public at all times;

(B) The board of directors of any nonprofit corporation which contracts with a state agency to receive community grant funds in consideration for rendering specified services to the public; provided, that community grant funds comprise at least thirty percent (30%) of the total annual income of such corporation. Except such meetings of the board of directors of such nonprofit corporation that are called solely to discuss matters involving confidential doctor-patient relationships, personnel matters or matters required to be kept confidential by federal or state law or by federal or state regulation shall not be covered under the provisions of this chapter, and no other matter shall be discussed at such meetings;

(C) The board of directors of any not-for-profit corporation authorized by the laws of Tennessee to act for the benefit or on behalf of any one (1) or more counties, cities, towns and local governments pursuant to the provisions of title 7, chapter 54 or 58. The provisions of this subdivision (b)(1)(C) shall not apply to any county with a metropolitan form of government and having a population of four hundred thousand (400,000) or more according to the 1980 federal census or any subsequent federal census;

(D) The board of directors of any nonprofit corporation which through contract or otherwise provides a metropolitan form of government having a population in excess of five hundred thousand (500,000) according to the 1990 federal census or any subsequent federal census with heat, steam or incineration of refuse;

(E)(i) The board of directors of any association or nonprofit corporation authorized by the laws of Tennessee that:

(a) Was established for the benefit of local government officials or counties, cities, towns or other local governments or as a municipal bond financing pool;

(continued...)

-3-

[1](...continued)

       (b) Receives dues, service fees or any other income from local government officials or such local governments that constitute at least thirty percent (30%) of its total annual income; and

       (c) Was authorized as of January 1, 1998, under state law to obtain coverage for its employees in the Tennessee consolidated retirement system.

       (ii) The provisions of this subdivision (b)(1)(E) shall not be construed to require the disclosure of a trade secret or proprietary information held or used by an association or nonprofit corporation to which this chapter applies. In the event a trade secret or proprietary information is required to be discussed in an open meeting, the association or nonprofit corporation may conduct an executive session to discuss such trade secret or proprietary information; provided, that a notice of the executive session is included in the agenda for such meeting.

       (iii) As used in this subdivision (b)(1)(E):

       (a) "Proprietary information" means rating information, plans, or proposals; actuarial information; specifications for specific services provided; and any other similar commercial or financial information used in making or deliberating toward a decision by employees, agents or the board of directors of such association or corporation; and which if known to a person or entity outside the association or corporation would give such person or entity an advantage or an opportunity to gain an advantage over the association or corporation when providing or bidding to provide the same or similar services to local governments; and

       (b) "Trade secret" means the whole or any portion or phrase of any scientific or technical information, design, process, procedure, formula or improvement which is secret and of value. The trier of fact may infer a trade secret to be secret when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes;

       (2) "Meeting" means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter. "Meeting" does not include any on-site inspection of any project or program.

       (c) Nothing in this section shall be construed as to require a chance meeting of two (2) or more members of a public body to be considered a public meeting. No such chance meetings, informal assemblages, or electronic communication shall be used to decide or deliberate public business in circumvention of the spirit or requirements of this part.

Tenn. Code Ann. § 8-44-102(2002).

       (a) NOTICE OF REGULAR MEETINGS. – Any such governmental body which holds a meeting previously scheduled by statute, ordinance, or resolution shall give adequate public notice of such meeting.

       (b) Notice of Special Meetings.  Any such governmental body which holds a meeting not previously scheduled by statute, ordinance, or resolution, or for which notice is not already provided by law, shall give adequate public notice of such meeting.

       (c) The notice requirements of this part are in addition to, and not in substitution of, any other notice required by law.

Tenn. Code Ann. § 8-44-103 (2002.

       **Minutes recorded and open to public – Secret votes prohibited.** – (a) The minutes of a meeting of any such governmental body shall be promptly and fully recorded, shall be open to public inspection, and shall include, but not be limited to, a record of persons present, all motions, proposals and resolutions offered, the results of any votes taken, and a record of individual votes in the event of roll call.

       (b) All votes of any such governmental body shall be by public vote or public ballot or public

(continued...)

awarded summary judgment to Mr. Thompson upon determining that, as an employee of MLGW whose position was eliminated in September 2004, Mr. Thompson was entitled to seek benefits under policy 22-25 in the amount of $275,955.70. The trial court awarded summary judgment to Mr. Thompson and entered judgment in his favor in the amount of $275,955.70. Mr. Thompson moved to alter or amend, seeking prejudgment interest, penalties for violation of the Open Meetings Act, a recalculation of benefits, an injunction against further violation of the Act, and a finding that MLGW was not authorized to take action regarding its severance policy following a January 2004 City Council resolution. The trial court denied prejudgment interest, penalties, and the request for additional findings with respect to the 2004 resolution. It also denied the claim for additional damages, holding that the issue was not properly before it. The trial court granted the injunctive relief based upon agreement of the parties. This appeal ensued. We reverse the award of summary judgment to Mr. Thompson and award summary judgment to MLGW on the grounds that, pursuant to the resolution adopted by the City Council in January 2004, enhanced severance benefits under policy 22-25 are not authorized or available absent approval by the Memphis City Council.

### *Issues Presented*

MLGW presents the following issues for our review:

(1)     Whether the chancery court erred in holding that MLGW's severance policy was lawfully adopted and/or valid despite the fact that it was never approved by the Memphis City Council.

(2)     Whether the chancery court erred by awarding Plaintiff a judgment for severance benefits in light of the Memphis City Council's January 20, 2004 resolution prohibiting MLGW from entering into any contracts for severance payments pursuant to MLGW's severance policy from and after January 20, 2004, and the enactment of substitute ordinance 5046.

---

[1](...continued)
roll call. No secret votes, or secret ballots, or secret roll calls shall be allowed. As used in this chapter, "public vote" means a vote in which the "aye" faction vocally expresses its will in unison and in which the "nay" faction, subsequently, vocally expresses its will in unison.

Tenn. Code Ann. § 8-44-104 (2002).

**Action nullified – Exception.** – Any action taken at a meeting in violation of this part shall be void and of no effect; provided, that this nullification of actions taken at such meetings shall not apply to any commitment, otherwise legal, affecting the public debt of the entity concerned.

Tenn. Code Ann. § 8-44-105 (2002).

(3)     Whether the chancery court erred by holding that MLGW's August 19, 2004 action to rescind its severance policy violated Tennessee's Open Meetings Act as a matter of law.

(4)     Whether the chancery court erred in holding that Plaintiff was entitled to any enhanced severance benefits under MLGW's severance policy in light of Plaintiff's election to receive and acceptance of a partial lump sum distribution of his pension benefits.

Mr. Thompson raises the following additional issues, as we slightly reword them:

(1)     Whether the trial court erred by allowing the Defendant to raise the defense of *ultra vires* even though it found the defense did not apply.

(2)     Whether the trial court erred by not awarding prejudgment interest.

(3)     Whether the trial court erred by not assessing a penalty.

(4)     Whether the trial court erred by not awarding damages for the alleged underpayment of the Plaintiff's pension benefits.

(5)     Whether the trial court erred by finding that the Defendant is subject to the provisions of Tennessee Code Annotated § 6-54-115.

### Standard of Review

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). We review the trial court's conclusions on matters of law and on mixed questions of law and fact *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is

not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588. We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

### *Analysis*

On appeal, MLGW asserts that the award of summary judgment to Mr. Thompson must be vacated because there is a genuine issue of material fact regarding the existence and extent of any alleged discussion between Board members concerning the revocation of policy 22-25 other than discussions held at the two Board meetings on August 19, 2004. It also argues that the policy was *ultra vires* and void; that any authority the Board may have had to make payments under the policy was revoked by the City Council prior to Mr. Thompson's termination; that Mr. Thompson failed to exhaust his administrative remedies; and that Mr. Thompson's decision to receive benefits other than those provided by policy 22-25 results in an election of remedies.

### The Ultra Vires Defense

The first issue which must be determined in this case, as we perceive it, is whether enhanced benefits under policy 22-25 were available to Mr. Thompson in September 2004. MLGW contends that policy 22-25 was *ultra vires* and, accordingly, void *ab initio* or, in the alternative, revoked by the Memphis City Council prior to August 2004. Mr. Thompson, on the other hand, asserts the policy was in effect until rescinded by the Board in August 2004; that the Board's vote is null and void due to violations of the Open Meetings Act; and that, notwithstanding the trial court's rejection of MLGW's *ultra vires* defense, the trial court should not have considered the defense because it was first raised by MLGW in its response to Mr. Thompson's motion for summary judgment. We begin our analysis of this issue with Mr. Thompson's objection to the defense on procedural grounds.

Mr. Thompson's argument in his brief to this Court, as we understand it, is that the trial court abused its discretion by implicitly permitting MLGW to amend its answer to assert the *ultra vires* defense after discovery had been conducted and Mr. Thompson's motion for summary judgment was pending. Although we agree with Mr. Thompson that MLGW asserted the *ultra vires* defense rather late in the process, we note that, in its answer filed on August 19, 2005, MLGW moved to dismiss on the grounds that "Board approval of the rescission of the severance policy was not a condition precedent." Additionally, we observe that this lawsuit is primarily grounded on the question of whether the enhanced severance policy was, in fact, effective in September 2004. Thus, we find no abuse of discretion in the trial court's decision to address the defense and turn to the substance of this issue.

Policy 22-25 is a comprehensive severance benefits policy available

(1) to employees and officers appointed to their full time employment position with MLGW who are terminated due to a reduction-in-force (elimination of job(s)), (2)

to employees and officers appointed to their full-time employment position with MLGW who are terminated due to a change in control or ownership of MLGW, and (3) with respect to officers appointed to their full-time employment position with MLGW, the expiration or earlier termination without cause of the term of appointment.

The policy references a number of additional personnel policies and includes two categories of severance benefits. The first category, category "A," provides for two weeks of severance pay calculated on the employee's base pay at the time of separation. The second category, "B," provides for "enhanced benefits" for "eligible employees and appointed officers who voluntarily enter into 'separation and release' agreements." In addition to the benefits included in category A, category B benefits include substantial additional scheduled benefits not available under category A. Category B benefits are available only to "eligible employees and appointed officers," however, and also are contingent upon the execution of a separation and release agreement by the employee/officer.

The parties argue at length regarding the extent to which the Memphis City Charter and Memphis Ordinances enable or authorize the MLGW Board to enact a severance policy, and, assuming the Board has such authority, the mechanisms by which such a policy may be implemented. However, it is undisputed that the authority of the MLGW Board is prescribed and circumscribed by the Charter and City Council, and that the Board may not act in excess of the authority granted to it by the City Council and the City Charter. *See Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475, 485 (Tenn. Ct. App. 2006). It also is undisputed that the Memphis City Council neither expressly authorized nor approved policy 22-25. Rather, MLGW's brief to this Court indicates that the policy was adopted by the Board to provide a type of security net to senior employees whose positions may have been threatened by the Mayor's proposed sale of MLGW. We make no comment regarding this tactic, but note that the Board apparently made no budgetary provision to fund enhanced severance benefits under the policy. Additionally, MLGW asserts that it has not entered into "separation and release" agreements with former employees as provided for under category B. Mr. Thompson does not dispute this assertion.

We agree with MLGW that a genuine issue of material fact exists regarding whether the MLGW Board exceeded its authority when it included the provision for enhanced severance benefits in personnel policy 22-25. However, we find it unnecessary to reach this issue where, on January 20, 2004, the City Council clearly limited the Board's authority to enter into contracts required for implementation of the enhanced severance benefits.

As noted above, policy 22-25 apparently went largely unnoticed until 2004. In January 2004, however, Mayor Herenton sought rescission of the policy and, on January 20, 2004, the Memphis City Council passed a resolution suspending the Board's ability to enter into the contracts required for the provision of category B benefits. The 2004 resolution states:

WHEREAS, pursuant to the City's Charter, Council approval is required of any salary or contract of MLGW in excess of $5,000, unless the Council by ordinance raises the amount of contracts or salaries that will require Council approval; and

WHEREAS, the Council by Ordinance 3509 increased the amount of contracts and salaries that may be made by the MLG&W Board of Commissioners without Council approval, provided any such expenditure is in an annual budget approved by Council; and

WHEREAS, the Council desires to determine the propriety and necessity for a severance policy adopted by the MLG&W Board of Commissioners, and in the interim prohibit the board from altering or amending the policy pending further study and approval by the Council.

NOW, THEREFORE, BE IT RESOLVED That 2004 MLG&W Budget is hereby amended

(i) To prevent the MLG&W Board of Commissioners from entering into any contracts providing for severance payments pursuant to the severance policy from and after the effective date of this resolution without Council approval; and

(ii) To prohibit the MLG&W Board from making any amendments or changes to the severance policy pending further study and approval by the Council.

This resolution prevented the MLGW Board from making any changes to the severance policy and from entering into the separation and release contracts required for the provision of category B benefits without Council approval. We disagree with Mr. Thompson, moreover, that this resolution is "illegal" because it was passed in excess of the authority granted by the City Charter. Section 681 of the City Charter states, in pertinent part:

The light, gas and water commissioners shall have no authority to make any contracts entailing an obligation of or involving an expenditure in excess of five thousand dollars, without the consent and approval of the board of commissioners of the City of Memphis or the duly authorized agent or representative of said board of commissioners of the City of Memphis.

Section 1 of Ordinance 3054, adopted in 1980, provides, in pertinent part:

The City Council by ordinance may raise the amount of contracts and salaries or compensation for employees or others requiring City Council approval to such amount as it may deem appropriate . . . .

Ordinance 3054 was amended by Ordinance 3509 in 1985. Ordinance 3509 provides, in pertinent part:

> WHEREAS, the Council has determined that an ordinance should be passed concerning the approval of salaries and contracts entailing obligations or involving expenditures and that the Council, in lieu of approval of individual contracts and salaries, should approve the budget established by the Board of Commissioner of the Memphis Light, Gas & Water Division.

> NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MEMPHIS:

> Section 1. . . . Any increase in the salaries or compensation of the President of the Memphis Light, Gas & Water Division shall be submitted to the City Council for approval. All other increases in the amounts of salaries or compensation for other employees may be approved by the Board of Commissioners of the Memphis Light, Gas & Water Division provided that no such increase shall result in annual compensation to such employee in excess of the President.

> Section 2. The Board of Light, Gas & Water Commissioners shall have authority to make contracts entailing any obligations or involving any expenditure for any amount without the consent and approval of the City Council of the City of Memphis so long as said amount is within the budget established by the Board of Commissioners of the Memphis Light, Gas & Water Division and approved by the City Council.

However, in light of the requirements of Sections 681 and 675 of the City Charter and Tennessee Code Annotated § 7-34-102, Substitute Ordinance 5046 was passed in April 2004. Section 2 of the Substitute Ordinance provides:

> Notwithstanding Ordinance 3509 to the contrary, any salaries or other compensation of any officers, executive management employees or other employees for MLG&W in excess of Ninety Thousand Dollars ($90,000) shall require Council approval in advance of employment.

Read together, these provisions now authorize the Board to offer limited compensation in an amount not to exceed $90,000 without Council approval providing the expenditure is within the budget approved by the City Council. Under Ordinance 3509, the Board was without authority to enter into contracts to provide the enhanced benefit unless the benefit was approved as part of the budgetary process. We note that MLGW asserts severance benefits are not "compensation" but "'extra money' paid to former employees." Regardless of whether such benefits constitute "compensation" under the Charter or Ordinances, enhanced benefits under category B unambiguously derive from the execution of a contract that is not a contract for employment and

which requires a budgetary allocation approved by the City Council. It is undisputed, moreover, that the enhanced severance benefit amounts were not approved by the City Council as a part of the MLGW budget.

Further, we do not agree that the above Ordinances permit the Board to execute "separation and release" contracts with MLGW employees in exchange for enhanced benefits packages as envisioned in part B of policy 22-25. The Ordinances are silent with respect to severance benefits and with respect to the extent of the Board's authority to execute agreements which contemplate a waiver of recourse to the courts in exchange for enhanced benefits. Thus, the January 2004 Resolution does not illegally circumvent the City Charter or Ordinances. Rather, it suspends the Board's authority to enter into a particular type of contract, that envisioned by category B of policy 22-25, absent Council approval pending a review of the severance benefit policy.

Although policy 22-25 is not *ultra vires per se* merely as a result of the Board's failure to submit a budget to fund the policy as required by the Ordinances, the City Council clearly circumscribed the Board's authority to enter into contracts under part B absent Council approval. The Ordinances, moreover, do not expressly grant the Board the authority to enter into contracts that not only provide severance benefits as part of a personnel policy, but require the employee to release the Board from further claims. Accordingly, although the City Council did not revoke policy 22-25 altogether, it prohibited the Board from entering contracts as provided by category B without Council approval. It further prevented the Board from altering or amending the severance policy pending further review by the Council. This, we believe, suggests future action by the City Council to review the severance policy and procedure. In September 2004, however, MLGW was without authority to execute an agreement with Mr. Thompson pursuant to which Mr. Thompson could receive enhanced severance benefits under policy 22-25 absent approval by the City Council.

### *Holding*

In light of the foregoing, the trial court's award of summary judgment to Mr. Thompson is reversed. Summary judgment is awarded to MLGW. The remaining issues are rendered moot by our disposition of this matter. Costs of this appeal are taxed to the Appellee, William L. Thompson, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE