# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 16, 2010 Session

## WILLIAM L. THOMPSON
### v.
## MEMPHIS LIGHT, GAS AND WATER AND JOSEPH LEE, III

**Appeal from the Circuit Court of Shelby County**
**CT- 001598-07    Lori K. Ridder, Judge**

**No. W2009-02447-COA-R3-CV - Filed April 29, 2011**

This is a wrongful termination case. The plaintiff senior management employee of a public utility was passed over for the position of president of the utility. In the meantime, federal law enforcement authorities were investigating matters involving the utility, and federal officers interviewed the plaintiff employee. Subsequently, the new president of the utility eliminated the plaintiff's job position and his employment was terminated. The plaintiff employee filed suit against the utility, alleging violation of Tennessee's Public Protection Act, and against the new president of the utility, in his individual capacity, alleging tortious interference with his employment and conspiracy. The defendants filed a motion to dismiss for failure to state a claim. The trial court granted the motion, and the plaintiff employee appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Ronald D. Krelstein, Germantown, Tennessee, for Plaintiff/Appellant, William L. Thompson.

Allan J. Wade, Brandy S. Parrish, and J. Gordon Howard, Allan J. Wade, PLLC, Memphis, Tennessee, for Defendants/Appellees, Memphis Light Gas & Water and Joseph Lee, III in his official capacity.

Robert L. J. Spence, Jr. and Bryan M. Meredith, SpenceWalk PLLC, Memphis, Tennessee, for Defendant/Appellee Joseph Lee, III in his individual capacity.

# OPINION

## FACTS AND PROCEEDINGS BELOW

This is an appeal[1] from the trial court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12.02(6) of the Tennessee Rules of Civil Procedure.[2] In reviewing a dismissal for failure to state a claim, the appellate court is to take the relevant and material allegations in the complaint as true. **Stein v. Davidson Hotel Co.**, 945 S.W.2d 714, 716 (Tenn. 1997). In this case, the motion to dismiss was granted as to the Third Amended Complaint, so our recitation of the facts is taken from this pleading.[3]

Plaintiff/Appellant William L. Thompson ("Thompson") began working for Defendant/Appellee Memphis Light, Gas and Water ("MLGW") in 1965. From 1984 until 1998, Thompson served as MLGW's Vice-President of Construction and Maintenance.[4] In 1998, Thompson was appointed to the position of Senior Vice-President and Chief Operating Officer at MLGW. He served under the former President of MLGW, Herman Morris.

At some point while Mr. Morris was President of MLGW, the Mayor of Memphis at that time, Mayor Willie Herenton, allegedly told MLGW President Morris to hire certain attorneys for legal work involving the issuance of bonds, and also directed that the bonds be issued by certain banks, including the bank that employed Mayor Herenton's son. Also during that time, a proposed sale of MLGW was under consideration. Such a proposed sale would

---

[1]This is the second appeal in this matter. The first appeal in this cause was **Thompson v. Memphis Light, Gas and Water Division**, 244 S.W.3d 815 (Tenn. Ct. App. 2007). In the first appeal, this Court granted summary judgment to MLGW on whether Thompson was entitled to severance benefits under an MLGW personnel policy. **See Thompson**, 244 S.W.3d at 815.

[2] Rule 12.02(6) provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief can be granted.

TENN. R. CIV. P. 12.02(6).

[3]The initial complaint was filed in March 2007, and was amended in September 2007 and December 2008. The Third Amended Complaint does not refer to these prior complaints or incorporate them by reference.

[4]Thompson's job titles prior to 1984 are not mentioned in the Third Amended Complaint.

allegedly generate substantial fees for the same lawyers and banks. Thompson was of the opinion that MLGW could not be sold, and believed that Mayor Herenton's plan to transfer money from any sale of MLGW to the city for budget purposes would violate state law, bond covenants, and MLGW contracts with TVA. Thompson expressed these opinions in internal discussions at MLGW.

In 2004, the Federal Bureau of Investigation ("FBI") investigated MLGW, including an investigation of the above activities. Federal officers interviewed Thompson.

Mr. Morris left the position of MLGW President. Thompson applied for the position, and believed that he was well qualified, based on his experience. Thompson was interviewed for the position of President and recommended by a search committee. Nevertheless, Mayor Herenton nominated Defendant/Appellee Joseph Lee, III ("Lee") to serve as President of MLGW, and Lee assumed the position in July 2004. Thompson believed that he was more qualified than Lee, based on Thompson's extensive experience.

For a two-month period after he began serving as President of MLGW, Lee had virtually no contact with Thompson or other executive staff at MLGW. During this same time period, Lee met with union officials and other employee groups and discussed eliminating MLGW managers and executive staff. Thompson was told that several former executives of MLGW advised Lee that Thompson "was an employee whose continued employment with MLGW would be of great importance to the successful operation of MLGW."

Thereafter, Lee met with Thompson and suggested to Thompson that he retire, allegedly strongly implying that Thompson's employment would be terminated if he chose not to retire. Thompson told Lee had no intention of retiring.

On September 13, 2004, Lee notified Thompson in writing that his position as Senior Vice-President and COO of MLGW was eliminated. Thompson was informed that there were no other positions available to him. Thompson was the only executive level employee at MLGW whose job was eliminated. After his job was eliminated, Thompson's job duties were performed by others in a functionally similar capacity "without regard to the title given the successor."

Thompson requested a review of his job elimination before the MLGW Board of Commissioners. He never received such a review.

On March 23, 2007, Thompson filed the instant lawsuit against MLGW and against Lee, in his official and individual capacities, seeking damages for lost future income and retirement

benefits.[5]  After several amended complaints and responses,[6] Thompson filed the Third Amended Complaint that is the subject of this appeal.

Thompson asserted that the termination of his employment constituted a violation of Tennessee's Public Protection Act, Tenn. Code Ann. § 50-1-304.  Thompson claimed that he had a property right in his job.  He contended that he was wrongfully denied a pre-termination hearing, contrary to MLGW's "established custom and practice" and "in violation of his rights as guaranteed by Article I § 8 of the Tennessee Constitution and the Fourteenth Amendment of the United States Constitution."  Thompson further claimed that the termination of his employment should have conformed to the MLGW "displaced employee" policy, under which Thompson would have had the right to be placed in the position he held before becoming MLGW's Senior Vice-President and Chief Operating Officer, or to be placed in a comparable position under MLGW policy, practice and procedure.  He asserted that only the MLGW Board had the authority to discharge him, and that Lee's elimination of Thompson's position circumvented the Board.

As to Lee, Thompson asserted that he was guilty of tortuously interfering with Thompson's employment.  He claimed that Lee eliminated Thompson's job for an improper personal purpose in that Lee "was fearful that [Thompson's] continued presence at MLGW would demonstrate that Lee was dependent upon the existing staff to successfully operate MLGW," and because Lee feared that Thompson's experience would make more evident Lee's lack of relevant experience.  Thompson maintained that the elimination of his job position was not in the best interest of MLGW, and that Lee acted with malice, spite, improper motive, and to serve his own personal interests.

Thompson further alleged a conspiracy between Lee and Mayor Herenton  "to take punitive job action against him by tortuously interfering with his job for cooperating with the federal investigation and opposing the sale of MLGW."  Thompson claimed several overt acts in furtherance of the conspiracy, including Lee's action "at the behest of [Mayor] Herenton" in persuading the Board of Commissioners to rescind MLGW's severance benefits policy to prevent Thompson from availing himself of any severance benefits, Lee's unilateral elimination of Thompson's position, Lee's decision not to apply the displaced employment

---

[5]A prior lawsuit was nonsuited, and this action was brought under Tennessee's Savings Statute, Tenn. Code Ann. § 28-1-105.

[6]The responses to the first complaint included a motion to dismiss, answers by both defendants, and a motion for summary judgment.  An amended complaint was followed by answers and another motion to dismiss. The second amended complaint was followed by yet another motion to dismiss.

policy to Thompson, and Lee's refusal to place Thompson in another position, or recall Thompson, even though there were open positions available.

In response, MLGW and Lee filed yet another motion to dismiss. The motion, filed pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, asserted that Thompson's Third Amended Complaint failed to state a claim upon which relief can be granted. MLGW and Lee argued in the motion that Thompson had no right to a pre-termination hearing, did not have a property right in his employment, did not allege any facts establishing a retaliatory motive, and did not allege facts showing a refusal to participate in or remain silent about illegal activities.

On November 18, 2009 the trial court issued two orders, the first as to the claims against Lee individually, and the second as to MLGW and the claims against Lee in his official capacity. As to the claims against Lee individually, the trial court noted that a complaint must "do more than simply parrot the legal elements of the cause[s] of action," citing *Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005). It found that the Third Amended Complaint alleged tortious interference with Thompson's employment only in conclusory terms. Specifically, the trial court found that Thompson, "alleges that Lee acted for an improper personal purpose and contrary to the best interests of MLGW without alleging any facts to support these conclusions. Malice, spite or improper motive is alleged, yet no facts are alleged to support these conclusions." For the same reason, it also dismissed the conspiracy claim against Lee.

As to MLGW, the trial court found that Thompson failed to state a claim under the Public Protection Act because Thompson alleged that Lee acted outside the scope of his employment and eliminated Thompson's job for his own personal reasons. In order for Thompson's Public Protection Act claim to prevail, the trial court held, Thompson had to show that his employer, MLGW, terminated his employment for reasons that violated the statute. Additionally, the trial court determined that none of the allegedly illegal acts asserted were in fact illegal. Ultimately, the trial court held that the Third Amended Complaint contained no facts showing a relationship between any alleged refusal to participate or remain silent about illegal activities and the termination of Thompson's employment.

As to Thompson's *Loudermill*[7] claim, the trial court noted that Thompson was an at-will employee, and as such no cause was required to terminate his employment and neither prior

---

[7]The *Loudermill* hearing is the first hearing in the grievance process, in which the employee is given the opportunity to present reasons why he should not receive the proposed discipline. *See Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487 (1985).

-5-

notice nor a post-termination hearing were required. The trial court found that Thompson did not have a property right in his job, and had no other rights granted by statute. For all of these reasons, the trial court granted both defendants' motion to dismiss the Third Amended Complaint. Thompson now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Thompson asserts that the trial court erred in dismissing the Third Amended Complaint for failure to state a claim upon which relief can be granted as to both MLGW and Lee, individually. Specifically, Thompson asserts that he sufficiently plead the elements of a claim against MLGW under Tennessee's Public Protection Act, and that he alleged sufficient facts to establish a constitutionally protected property right in his continued employment at MLGW and entitlement to a pre-termination or *Loudermill* hearing. Thompson also maintains that he alleged sufficient facts to establish the elements of a claim for relief against Lee in his individual capacity for tortious interference with Thompson's employment at MLGW and conspiracy.

Our Supreme Court has recently described the standard of review for the grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Tennessee Rules of Civil Procedure Rule 12.02(6):

> A Rule 12.02(6) motion to dismiss under the Tennessee Rules of Civil Procedure seeks "to determine whether the pleadings state a claim upon which relief can be granted." *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn.2007). Such a motion tests only the legal sufficiency of the complaint, not the strength of the proof. The resolution of the motion is determined by an examination of the pleadings alone. *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc*., 878 S.W.2d 934, 938 (Tenn.1994) (citing *Wolcotts Fin. Servs., Inc. v. McReynolds*, 807 S.W.2d 708, 710 (Tenn. Ct. App.1990)). In considering a motion to dismiss, courts must construe the assertions in the complaint liberally; the motion cannot be sustained unless it appears that there are no facts warranting relief. *Id*. (citing *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848–49 (Tenn.1978)). On appeal, all allegations of fact by the Plaintiffs must be taken as true. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). Our scope of review is de novo with no presumption of correctness. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn.2008); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn.1996).

*Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *see also Doe v. Cath. Bishop for the Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008).

## ANALYSIS

### *Public Protection Act*

Thompson asserts that he alleged sufficient facts in his Third Amended Complaint to support a claim against MLGW under Tennessee's Public Protection Act. Thompson argues that Lee's decision, acting on behalf of MLGW, to eliminate his job position was made in violation of the Act.

Thompson claims that his employment was terminated because he was interviewed by the F.B.I. as part of its investigation of MLGW activities.[8] He asserts that, "it matters not that the F.B.I. investigation concluded without anyone being formally charged. What does matter is that employees have a right to assist in such investigations without fear of being discharged for doing so." Thompson claims that the trial court "overlooked the probability that the F.B.I. was investigating 'pay to play' conduct by [Mayor] Herenton regarding his requests that certain lawyers and banks be involved in the MLGW bond issue" and "if the steering of the 'business' was a payoff for political support, campaign contributions, etc., then it would be illegal." Thompson also points to the following allegation in his complaint: "Before the plaintiff's job was eliminated, the plaintiff advised Lee that certain acts of Lee were in violation of regulations governing the operation of MLGW." Thompson notes that the Third Amended Complaint states that he objected to the sale of MLGW, saying that it could not be sold, and that he said that Mayor Herenton's plan to have monies transferred from MLGW to the city for budgetary purposes "was prohibited by state law, bond covenants, and contractual obligations with T.V.A." These allegations, Thompson insists, are sufficient to state a claim under the Public Protection Act. He emphasizes that, "a plaintiff is not required to plead every shred of evidence that exists or might be discovered prior to trial in order to state a claim."

The employment-at-will doctrine is a bedrock of the Tennessee common law. *Van Cleave v. Reelfoot Bank*, No. W2008-01559-COA-R3-CV, 2009 WL 3518211, at \*3 (Tenn. Ct. App. Oct. 30, 2009). (citing *Franklin v. Swift Transp. Co., Inc.,* 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006)). Under this doctrine, an employer may terminate the employment of a person

---

[8]Thompson argues in his appellate brief that his discharge violated a federal statute that purportedly prohibits retaliation against an employee who is interviewed by a federal official. As no such allegation under a federal statute was included in the Third Amended Complaint, we do not consider it here.

employed for an indefinite term "at any time, for good cause, bad cause, or no cause at all." *Id*. (citing *Franklin*, 210 S.W.3d at 527).

This traditional rule, however, is not absolute; restrictions have been placed on the right of an employer to discharge an employee. Specifically, retaliatory discharge is "an important, but narrow, exception to the at-will doctrine," applicable only in limited circumstances. *Van Cleave*, 2009 WL 3518211, at *3 (quoting *Franklin*, 210 S.W.3d at 530). Here, Thompson alleges retaliatory discharge under the Tennessee Public Protection Act, Tennessee Code Annotated § 50-1-304. Subsection (b) of this Act provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." T.C.A. § 50-1-304(b) (2009 Supp.). The elements required to establish a claim under the Public Protection Act were summarized in *Franklin*:

> To prevail under the Public Protection Act, a plaintiff must establish: (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, "illegal activities" as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination.

*Franklin*, 210 S.W.3d at 528. Here, the parties agree that Thompson was an employee of MLGW and that his employment was terminated. The remaining elements of the Public Protection Act claim are disputed. We consider each in turn.

### A. Illegal Activities

In the Public Protection Act, the term "illegal activities" is defined as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." T.C.A. § 50-1-304(a)(3) (2009 Supp.). The trial court found that the Third Amended Complaint did not allege any illegal activities, observing: "The sale of MLGW, retaining certain lawyers, and the steering of bond business to certain banking interests are not illegal activities." We consider the allegations in the Third Amended Complaint highlighted by Thompson on appeal.

First, Thompson ominously argues that there was a "probability" that the F.B.I. was investigating "pay to play" conduct by public officials, namely, "steering business to certain lawyers or banks as a payoff for political support, campaign contributions, etc." Unfortunately, much of this was not included in the Third Amended Complaint. The Complaint states only that the F.B.I. was "investigating the affairs of MLGW" and that the investigation involved the Mayor's actions in steering business to certain lawyers and banks.

"Pay to play" conduct by public officials was not mentioned and cannot be inferred from the allegations in the Third Amended Complainant. We agree with the trial court that these allegations in and of themselves do not sufficiently state illegal activities.

More importantly, as to Thompson, the Third Amended Complaint states only this: "The plaintiff was interviewed by federal officers." Nothing more. We do not know from the Complaint what the "federal officers"[9] asked Thompson, or what he said. Thus, the Complaint simply does not allege that Thompson discussed "illegal activities" with the unspecified "federal officers."

As to the proposed sale of MLGW, the Third Amended Complaint states only that Thompson opined "that MLGW could not be sold." This likewise states no "illegal activity" within the definition in the Public Protection Act.

The Third Amended Complaint avers that Thompson said to unspecified persons in "internal discussions at MLGW" that the Mayor's plan to transfer monies from MLGW to the city "was prohibited by state law," and that Thompson told Lee that certain of his actions "were in violation of regulations governing the operation of MLGW." Though largely conclusory under the principles of notice pleading, we find that these allegations are barely sufficient as to the element of "illegal activities."[10]

## B. Refusal to Participate

In **Van Cleave**, the court discussed the two types of retaliatory discharge claims under the Public Protection Act:

> [T]he term "retaliatory discharge" includes both (1) discharge in retaliation for refusing to *remain silent* about illegal activities, usually referred to as "whistleblowing," and (2) discharge in retaliation for refusing to *participate in* illegal activities. The claims are similar but distinct.
>
> * * *
>
> In a whistleblowing claim, the plaintiff must show that he refused to remain silent about his employer's illegal activities, and the requisite causal

---

[9]We presume *arguendo* that the "federal officers" were F.B.I. officials.

[10]We note that the allegation as to the proposed transfer of monies from MLGW to the city was an allegation of purportedly illegal activities not by MLGW, but by Mayor Herenton. We have held that under T.C.A. § 50-1-304(c), the "illegal activities" need not be by the employer. **See Guy v. Mutual of Omaha**, 2001 WL 204485, at *10.

relationship between his refusal to remain silent and his discharge. In a refusal-to-participate claim, the plaintiff must show that he refused to participate in illegal activities and the requisite causal relationship between his refusal to participate and his discharge.

*Van Cleave*, 2009 WL 3518211, at \*7-8 (emphasis in original) (footnotes and citations omitted).

In this case, Thompson's Third Amended Complaint alleges no facts indicating that he was asked or expected to participate in illegal activities, or that he refused to do so.

### C. Refusal to Remain Silent

As noted above, concerning the F.B.I. investigation of MLGW activities, the Third Amended Complaint alleges only that Thompson "was interviewed by federal officers." In considering a motion to dismiss under Rule 12.02(6), we are constrained to "construe the assertions in the complaint liberally; the motion cannot be sustained unless it appears there are no facts warranting relief." *Leggett*, 308 S.W.3d at 851. We are not constrained, however, to insert facts that are not alleged. The Third Amended Complaint simply does not say what, if anything, Thompson said to the unspecified "federal officers."

As to the remaining allegations, the Third Amended Complaint recounts only internal discussions within MLGW. Thompson asserts that he told Lee that certain of Lee's actions violated unspecified regulations, and that Thompson said in "internal discussions at MLGW" that MLGW could not be sold and that the Mayor's plan to transfer MLGW monies to the city would violate state law. Nowhere does the Third Amended Complaint allege that Thompson made any attempt to report these alleged "illegal activities" to officials or regulators outside MLGW. This is required in order to establish a claim of retaliatory discharge for refusal to remain silent. *See Collins v. AmSouth Bank*, 241 S.W.3d 879, 885 (Tenn. Ct. App. 2007) (abrogated in other respects in *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 788-89 (Tenn. 2010)).

Thus, we must agree with the trial court that Thompson's Third Amended Complaint fails to state a claim against MLGW under the Tennessee Public Protection Act.

### *Loudermill* Claim

Thompson also asserts on appeal that he alleged sufficient facts to establish a constitutionally protected property interest in his continued employment at MLGW, and that accordingly he

was entitled to a pre-termination or *Loudermill* hearing. In his brief, Thompson admits that he was an at-will employee, but asserts that it was the policy, practice, and custom of MLGW to provide employees with a hearing. Thompson further asserts that it was the personnel policy of MLGW to provide a hearing for employees when such employees were terminated, and that this policy was arbitrarily not applied to him. Based on personnel policy, practice, and past custom of MLGW, Thompson asserts that he had a property right in his job.

This Court has previously described the circumstances under which an employee may be entitled to a *Loudermill* hearing:

> The term *Loudermill* hearing stems from the United States Supreme Court decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed.2d 494 (1985). The *Loudermill* Court held that a public employee who can be discharged only for cause must be given notice and an opportunity to respond to the charges against him prior to termination.

*Case v. Shelby Cty. Civil Service Merit Bd.* 98 S.W.3d 167, 170 (Tenn. Ct. App. 2002) (citing *Loudermill*, 470 U.S. at 546, 105 S. Ct. 1487)).

As noted by the trial court, Thompson acknowledges in his complaint that he was an at-will employee, not an employee who could be discharged only for cause. Therefore, we agree with the trial court's holding that Thompson had no due process right to a *Loudermill* hearing.

The Third Amended Complaint refers to MLGW policies affording a hearing to discharged employees. However, Thompson was not discharged; rather, his job position was eliminated. We agree with the trial court's holding on this claim.

### *Tortious Interference*

Thompson asserts that the trial court erred in dismissing his claim against Lee, in his individual capacity, for tortious interference with Thompson's employment with MLGW. The trial court found that Thompson, "alleges that Lee acted for an improper personal purpose and contrary to the best interests of MLGW without alleging any facts to support these conclusions. Malice, spite or improper motive is alleged, yet no facts are alleged to support these conclusions." Thompson asserts that the Third Amended complaint alleges that Lee's actions were not in the best interest of MLGW, that Lee acted for purely selfish reasons and with malice, and that Lee acted in retaliation for Thompson's F.B.I. interview. Thompson maintains that this is sufficient to state a claim.

This Court has previously set forth the requirements for a claim of intentional interference with employment:

The essential elements of a claim for intentional interference with employment are "that the defendant intentionally and without justification procured the discharge of the employee in question." ***Ladd v. Roane Hoisery, Inc.,*** 556 S.W.2d 758, 760 (Tenn. 1977). A claim for intentional interference with employment "contemplate[s] a three-party relationship – the plaintiff as employee, the corporation as employer, and the defendants as procurers or inducers." ***Nelson v. Martin***, 958 S.W.2d 643, 647 (Tenn. 1997).

An at-will employee . . . can be terminated at any time for good cause, bad cause or no cause. ***See Clanton v. Cain-Sloan Co.,*** 677 S.W.2d 441, 443 (Tenn. 1984). However, even an at-will employee has a property interest in continued employment without unjustified interference by those who stand outside the employment relationship. ***Ladd***, 556 S.W.2d at 760. Where a third party intentionally and unjustifiably interferes with that employment interest by procuring the plaintiff's termination, a cause of action will lie against the third party. ***Baldwin v. Pirellie Armstrong Tire Corp.***, 3 S.W.3d 1, 6 (Tenn. Ct. App. 1999).

A corporation may only act through its agents and employees; consequently, a corporate director, officer or employee is not individually liable for tortious interference with a corporate contract, such as an at-will employment agreement, so long as he is acting in furtherance of the corporate interest. ***Forrester v. Stockstill,*** 869 S.W.2d 328, 334-335 (Tenn. 1994). A corporate director, officer or employee may be held liable for interference with such a contract if "he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests." ***Id***. at 333 (quoting Thomas G. Fisher, Annotation, *Liability of Corporate Direct, Officer or Employee for Tortious Interference with Corporation's Contract with Another*, 72 A.L.R.4th 492 (1989)).

However, where there is intentional interference with an employment contract, there is frequently "some element of ill will"; consequently, where the director, officer or employee is generally acting in furtherance of the corporate interest, "the addition of a spite motive usually is not regarded as sufficient to result in liability." ***Id***. at 333 (quoting W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 130, pp. 1009-10 (5th ed. 1984)). He may be held liable if "the reason underlying his interference is purely a malevolent one, and a desire to do harm to the plaintiff for its own sake." ***Id***. In *Forrester*, the Court emphasized that the public interest is served by corporations having candid

-12-

advice from their officers and employees, and noted that fear of individual liability would limit such advice. *Id*. at 334. Consequently, the actions of an officer, director or employee of a corporation are considered to be the actions of the corporation so long as he is acting "within the general range of this authority, and his actions are substantially motivated by an intent to further the interest of the corporation." *Id*. at 334-35. Under these circumstances, the director, officer, or employee is immune from individual liability. *Id*.

*Lyne v. Price*, No. W2000-00870-COA-R3-CV, 2002 WL 1417177, at *2-3 (Tenn. Ct. App. June 27, 2002).

Cases applying and interpreting *Forrester v. Stockstill* have emphasized the requirement that a plaintiff who asserts a claim for intentional interference with employment must assert facts showing that the defendant stood as a third party to the relationship between the plaintiff employee and the employer. In *Waste Conversion Systems, Inc. v. Greenstone Industries, Inc.*, 33 S.W.3d 779 (Tenn. 2000), the court applied *Forrester* as follows:

*Forrester* indicates that Tennessee has recognized a privilege against an interference of contract claim when there is unity of interest between the interfering party and the breaching party. *Forrester* also shows that the claim can be alleged successfully only when the interfering party is a third party not closely tied to the operation of the reaching corporation.

*Id.* at 782 (certified question on whether parent corporation can be liable for inducing breach by subsidiary). In *Nelson v. Martin*, the court addressed a claim against two defendants, the president and CEO of a corporation, and a director of the corporation, for inducing the wrongful termination of an employee of the corporation. The court stated: "In order for there to be a three-party relationship, there must be a showing that the defendants were acting outside the scope of their duties as officers of the corporation rather than on behalf of the corporation." *Nelson*, 958 S.W.2d at 647. The court held that the plaintiff's allegation essentially that the defendant "acted wrongfully in terminating his employment" was insufficient. *Id.*

In this case, Thompson emphasizes that the Third Amended Complaint asserts that Lee was jealous of Thompson because of Thompson's experience and stature within MLGW, and that Lee acted with malice and spite. The court has noted, however, that an allegation of ill will or spite in and of itself "is not sufficient to result in liability." *Lyne v. Price*, 2002 WL 1417177, at *3 (citing *Forrester*, 869 S.W.2d at 333). In a later case, the court clarified that "the malice element . . . is one of the elements of the [intentional interference] claim, and is

separate from the three-party relationship which the plaintiff must also prove." ***Rennell v. Through the Green, Inc.***, No. M2006-01429-COA-R3-CV, 2008 WL 695874, at *7 n.4 (Tenn. Ct. App. Mar. 14, 2008). To show that the defendant stood as a third party to the plaintiff's employment relationship, the Court looks for facts showing "that the defendant[] would benefit personally from plaintiff's discharge." ***Fitzgerald v. Abbott***, Nol. M2008-00920-COA-R3-CV, 2009 WL 304421, at *2 (Tenn. Ct. App. Feb. 5, 2009).

In ***Lyne v. Price***, the Court found that the plaintiff's complaint alleged sufficient facts to show that the defendant Coach Price stood as a third party to the plaintiff's employment with a university. As the plaintiff's immediate supervisor, Coach Price had the authority to procure the termination of the plaintiff's employment with the university. ***Lyne***, 2002 WL 1417177, at *4. However, in addition to his work as the university's basketball coach, Coach Price operated basketball camps that were independent from the university. ***Id.*** at *1. The plaintiff performed administrative tasks related to both the university's basketball team and Coach Price's separate basketball camps. ***Id.*** In her complaint, the plaintiff asserted that "Coach Price's procurement of her termination was motivated by her actions or refusal to act related to the basketball camp, separate from Coach Price's job duties as head basketball coach, and in furtherance of his individual economic interests." ***Id.*** at *4. The Court found these allegations sufficient to state a claim against Coach Price individually for intentional interference with the plaintiff's employment with the university. ***Id.***

In the case at bar, we find no facts alleged in the Third Amended Complaint showing that Lee "would benefit personally from [Thompson's] discharge." ***Fitzgerald***, 2000 WL 304421, at *2. Assuming the truth of Thompson's allegation that his continued employment would have benefitted MLGW and the termination of his employment was not in the best interest of MLGW, this shows only that Lee's actions were misguided or, at worst, spiteful and jealous. It does not show that Lee stood as a third party to the employment relationship or that Lee stood to benefit personally from the termination of Thompson's employment.

Thus, we must agree with the trial court's finding that the Third Amended Complaint does not state a claim against Lee for intentional interference with Thompson's employment.

## Conspiracy

The final issue raised by Thompson on appeal is whether the trial court erred in dismissing his claim against Lee in his individual capacity for conspiracy. As the Tennessee Supreme Court has previously noted, in a cause that includes both a claim for intentional interference with employment and a claim for conspiracy, "the determinative legal theory is the intentional interference with at-will employment. If that claim fails, then the claim for conspiracy must

also fail for '[i]t cannot be that a conspiracy to do a thing is actionable where the thing itself would not be.' " ***Forrester v. Stockstill***, 869 S.W.2d 328, 330 (Tenn. 1994). Accordingly, we must also affirm the dismissal of Thompson's claim against Lee for conspiracy.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal shall be taxed to the Appellant, William L. Thompson, and his surety, for which execution may issue, if necessary.


_____
HOLLY M. KIRBY, JUDGE